**E-Filed 7/19/10**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| VALLEY FORGE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY and DOES 1 through 10 inclusive,<br><br>Defendants.<br><br>_____<br><br>LEXINGTON INSURANCE COMPANY,<br><br>Cross-Complainant,<br><br>v.<br><br>VALLEY FORGE INSURANCE COMPANY; TRANSPORTATION INSURANCE COMPANY, and DOES 1 through 10, inclusive,<br><br>Cross-Defendants. | Case No. C 09-1385 JF (PVT)<br><br>**ORDER[1] DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[RE: Docket Nos. 27, 30] |

Plaintiff Valley Forge Insurance Company ("Valley Forge") moves for summary

_____

[1] This disposition is not designated for publication in the official reporter.

1  judgment, and Defendant Lexington Insurance Company ("Lexington") moves for partial

2  summary judgment.  Fed. R. Civ. P. 56.  The Court has considered the moving and responding

3  papers and the oral argument of counsel presented at the hearing on May 28, 2010.  For the

4  reasons discussed below, both motions will be denied.

5                          **I.  FACTUAL AND PROCEDURAL BACKGROUND**

6  **A.      Lexington's Policies for Nibbi**

7          **1.      Primary Policy**

8          Lexington issued commercial general liability policy number 4136439 to Nibbi Concrete

9  ("Nibbi"), effective from November 1, 2005, until November 1, 2006 (the "Lexington Primary

10 Policy").  (*See* Compendium of Exhibits in Support of Pl.'s Motion for Summary Judgment

11 ("Compend.") Ex. 5.)  Section I.A. of the policy, concerning coverage for bodily injury and

12 property damage liability, provided in relevant part as follows:

13          1.      Insuring Agreement.

14                  a.      We will pay those sums that the insured becomes legally obligated
                            to pay as damages because of "bodily injury " or "property
15                          damage" to which this insurance applies. . . .

16                  b.      This insurance applies to "bodily injury" and "property damage"
                            only if:
17
                            (1)     The "bodily injury" or "property damage" is caused by an
18                                  "occurrence" that takes place in the "coverage territory";

19                          (2)     The "bodily injury" or "property damage" occurs during the
                                    policy period . . .
20

21 (*Id.*)  The policy contained a limit of $1,000,000 of liability for each occurrence.  (*Id.*)

22          **2.      Excess Policy**

23          Lexington issued policy number 5577332 to Nibbi for the same period (the "Lexington

24 Excess Policy").  That policy contained a $10,000,000 limit for liability for each occurrence.  It

25 also provided that:

26

27 Case No. C 09-1385
   ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
   MOTION FOR PARTIAL SUMMARY JUDGMENT
28 (JFLC3)                                          2

A.   We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury** and **Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**. . . .

B.   This policy applies only if:

1.   the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period** . . .

(Compend. Ex. 6 at Stip 364 (emphasis in original).)

**B.   Valley Forge's Policy for Doyle's**

Valley Forge issued a similar commercial general liability policy to Doyle's Work Company, Inc. ("Doyle's).   Policy number C2090476038 (the "Valley Forge Primary Policy") was effective from June 10, 2006, until June 10, 2007.  In addition to its coverage provisions, the Valley Forge Primary Policy contained an express exclusion of "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law."  (Compend. Ex. 3 at Stip 112.)

The policy also contained a Contractor's Scheduled and Blanket Additional Insured Endorsement with Products Completed Coverage (the "Additional Insured Endorsement"), as follows:

A.   **Who is an insured (Section II)** is amended to include as an additional insured any person or organization . . . whom you are required to add as an additional insured on this policy under a written contract or written agreement; but the written contract or written agreement must be:

1.   Currently in effect or becoming effective during the term of this policy; and

2.   Executed prior to the "bodily injury," "property damage," or "personal and advertising injury."

B.   The insurance provided to the additional insured is limited as follows:

1.   That a person or organization is an additional insured solely for

Case No. C 09-1385
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(JFLC3)                                            3

1  liability due to your negligence and specifically resulting from
2  "your work" for the additional insured which is the subject of the
   written contract or written agreement.  No coverage applies to
3  liability resulting from the sole negligence of the additional
   insured.

4  (*Id.* at Stip 141 (emphasis in original).)

5  **C.      The Subcontract Between Doyle's and Nibbi**

6        In February 2006, Doyle's entered into a subcontract with Nibbi to complete structural

7  excavation and grading work on a project at Cabrillo Community College in Aptos, California

8  (the "Subcontract").  (*See* Compend. Ex. 1.)  The Subcontract contained several sections

9  pertaining to indemnification, two of which arguably are relevant to this action.[2]  Paragraph 3,

10 entitled simply "Indemnification," provided:

11     **3.1      Subcontractor's Performance**– Subcontractor shall indemnify and hold
   harmless Owner and Contractor, including their officers, agents,
12 employees, affiliates, parents and subsidiaries, and each of them, of and
   from any and all claims, demands, causes of action, damages, costs,
13 expenses, actual attorneys' fees, losses or liability, in law or in equity, of
   every kind and nature whatsoever ("Claims") in whole or in part out of or
14 in connection with all work which is covered by or incidental to this
   Agreement for, but not limited to:

15

16         3.1.1   Personal injury, including, but not limited to, bodily injury,
   emotional injury, sickness or disease, or death to persons, including
   but not limited to employee's [sic] or agents of Subcontractor,
17 Owner, Contractor, or any other subcontractor and/or damage to
   property of anyone (including loss of use thereof), howsoever same
18 may be caused by or alleged to be caused in whole or in part by any
   negligent act or omission of Subcontractor or anyone directly or
19 indirectly employed by Subcontractor or anyone of whose acts
   Subcontractor may be liable regardless of whether such personal
20 injury or damage is caused by a party indemnified hereunder. . . .

21         3.1.4   Any violation or infraction by Subcontractor of any law, order,
   citation, rule, regulation, standard, ordinance or statue [sic] in any
22 way relating to the occupational health or safety of employees,
   including, but not limited to, the use of Contractor's or other's
23 equipment, hoist, elevators, or scaffolds, any penalties imposed on

24 _____

25    [2]A third section, Paragraph 21, addresses indemnification for patent rights and has no
   relevance to this action.
26

1   account of the violation of any law, order, citation, rule,
    regulations, standard, ordinance or statue [sic], caused by the
2   action or inaction of Subcontractor, or any infringement of any
    patent rights which may be brought against the Contractor or
3   Owners arising out of Subcontractor's work. . . .

4       3.3     **Additional Duties**: Subcontractor shall: (a) at Subcontractor's own cost,
                expense and risk, defend all Claims as defined in Paragraph 3 that may be
5               brought or instituted by third persons, including, but not limited to,
                governmental agencies or employees of Subcontractor, against Contractor
6               or Owner or their agents or employees or any of them; (b) pay and satisfy
                any judgment or decree that may be rendered against Contractor or Owner
7               or their agents or employees, or any of them, arising out of such Claim;
                and/or (c) reimburse Contractor or owner or their agents or employees for
8               any and all legal expense incurred by any of them in connection herewith
                or in enforcing the Indemnity granted in this Paragraph 3. . . .
9
        3.5     Notwithstanding anything else agreed to in section 3.1 through 3.4 above,
10              it is agreed that Subcontractor shall defend Contractor and Owner
                regarding all matters described in this indemnity clause, but Subcontractor
11              shall only be liable for Subcontractor's own proportional share of
                negligence as determined by a "trier of fact."
12
    (Compend. Ex. 1 at Stip 005 (emphasis in original).)  Paragraph 25, entitled "Indemnity Clause
13
    Re: Safety and Employment," provided that:
14
        Subcontractor, shall at is [sic] own expense, comply with Contractor's Project
15      Safety Program (Exhibit "G") and with all applicable safety and environmental
        requirements, laws, regulations, rules or ordinances, promulgated by any
16      government authority, whether now existing or subsequently enacted.  The scope
        of Subcontractor's responsibility under this paragraph shall extend to itself, its
17      agents, employees, material suppliers, and sub-contractors with respect to its
        portion of its work.  Subcontractor shall pay, respond to, or defend against any
18      citation, assessment, fine or penalty relating to the failure of any person or entity
        listed above to so comply.
19      . . .
        Subcontractor shall indemnity [sic], hold harmless and defend Contractor from
20      and against all liabilities and legal obligations, and against any damages arising
        therefrom, caused or alleged to have been caused, whether in whole or in party
21      [sic], by any act or omission, whether active or passive, of Subcontractor's failure
        by any other means to fulfill the covenants set forth in this paragraph.  This
22      obligation to indemnify, hold harmless and defend Contractor shall extend to all
        claims, citations, actions, assessments, penalties, awards, judgments, fines and
23      indictments brought against Contractor, whether civil, criminal, administrative, or
        otherwise.  It is understood that these obligations extend to, among others, any
24      citations issued by the California Division of Occupational Safety and Health to
        Contractor under Title 8, California Code of Regulations, sections 336.10 and
25      336.11 relating to multi-employer worksites.

26

27  Case No. C 09-1385
    ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
    MOTION FOR PARTIAL SUMMARY JUDGMENT
28  (JFLC3)                                      5

1    (*Id.* at Stip 012.)

2    **D.      Hetrick's Injury, Suit, and Settlement**

3          On July 6, 2006, Larry Hetrick ("Hetrick"), a Doyle's employee, fell into a ditch while he

4    was working at the Cabrillo Community College construction site.  Hetrick suffered injuries as a

5    result of the fall, and he received workers' compensation benefits from Doyle's workers'

6    compensation policy.

7          On September 15, 2006, Hetrick filed suit against Nibbi in San Francisco Superior Court,

8    alleging that his damages were the result of Nibbi's negligence (the "Underlying Action").  (*See*

9    Compend. Ex. 9.)  Nibbi cross-complained against Doyle's.  ("Dooley Decl. ¶ 5, Ex. 4.)  "Nibbi

10   tendered to Valley Forge as an additional insured and Valley Forge defended Nibbi fully,

11   [providing] independent (Cumis) counsel, under a reservation of rights.  Lexington did not

12   defend its insured, Nibbi, in the Underlying Action."  (Dollinger Decl. ¶ 10.)

13         In late 2008, prior to trial, Hetrick, Valley Forge, and Lexington settled the Underlying

14   Action.  (*See* Compend. Ex. 2.)  Under the settlement, Valley Forge and Lexington each agreed

15   to pay Hetrick $875,000 in exchange for Nibbi's dismissal with prejudice.

16   **E.      The Instant Action**

17         Valley Forge initiated the instant action in state court on February 19, 2009, seeking

18   declaratory relief and reimbursement for its payment to Hetrick pursuant to the settlement.  On

19   March 27, 2009, Lexington cross-complained against Valley Forge and Transportation Insurance

20   Company ("Transportation") seeking declaratory relief, equitable subrogation, and equitable

21   indemnity.  On March 30, 2009, Lexington amended its counterclaim and removed the action to

22   this Court.  On April 23, 2010, Valley Forge and Lexington filed the instant motions.

23                                   **II.  LEGAL STANDARD**

24         A motion for summary judgment should be granted if there is no genuine issue of

25   material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

26

1   56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those

2   that might affect the outcome of the case under the governing law.  *Id.* at 248.  There is a genuine

3   dispute about a material fact if there is sufficient evidence for a reasonable jury to return a verdict

4   for the nonmoving party.  *Id.*  The moving party bears the initial burden of informing the court of

5   the basis for the motion and identifying portions of the pleadings, depositions, admissions, or

6   affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v.*

7   *Catrett*, 477 U.S. 317, 323 (1986).  Where the party moving for summary judgment would not

8   bear the ultimate burden of persuasion at trial, it must either produce evidence negating an

9   essential element of the nonmoving party's claim or defense or show that the nonmoving party

10  does not have enough evidence of an essential element to carry its ultimate burden of persuasion

11  at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the

12  moving party meets its initial burden, the burden shifts to the nonmoving party to present specific

13  facts showing that there is a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(e);

14  *Celotex*, 477 U.S. at 324.

15       The evidence and all reasonable inferences must be viewed in the light most favorable to

16  the nonmoving party.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-

17  31 (9th Cir. 1987).  Summary judgment thus is not appropriate if the nonmoving party presents

18  evidence from which a reasonable jury could resolve the material issue in its favor.  *Liberty*

19  *Lobby*, 477 U.S. at 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

## III.  DISCUSSION

**A.     Valley Forge's Motion**

     **1.       The Parties' Arguments**

23       Valley Forge's argues that it is entitled to indemnification, and Lexington is not, because:

24  (1) under California law, Doyle's liability to Hetrick for any damages caused by its own

25  negligence is covered by Doyle's workers' compensation insurance and has been resolved; (2)

1   under California law, Nibbi cannot be held liable to Doyle's employee for Doyle's negligence;

2   (3) under California law and the applicable indemnity provisions of the Subcontract, Doyle's

3   liability to Nibbi is limited to Doyle's own negligence, which was resolved through the workers'

4   compensation process; and (4) Nibbi is not an additional insured for purposes of the

5   Subcontract's indemnity provisions because additional insured status covers liability arising from

6   Doyle's negligence only.  From these propositions, Valley Forge reasons that it is entitled to

7   indemnification and reimbursement because the payments it made to settle the *Hetrick* action

8   were attributable to Nibbi's negligence.

9                   **a.       Doyle's Liability to Hetrick for Its Own Negligence**

10          Valley Forge first argues that Doyle's liability for its own negligence in causing injuries

11  suffered by its employee, Hetrick, is the exclusive province of the California workers'

12  compensation scheme as codified at California Labor Code § 3600 et seq.  Valley Forge contends

13  that because it is undisputed that Hetrick received workers' compensation benefits from Doyle's

14  and because those benefits represent Hetrick's only remedy against Doyle's, "the only damages

15  Hetrick could have recovered [in the settled lawsuit] would necessarily have had to arisen out of

16  Nibbi's own negligence." (Valley Forge's Mot. 12-13.)

17                  **b.       Nibbi's Liability to Hetrick for Doyle's Negligence**

18          Valley Forge contends further that the exclusivity of California's workers' compensation

19  scheme bars Nibbi's liability to Hetrick for Doyle's negligence.  Valley Forge asserts that under

20  *Privette v. Superior Court*, 5 Cal. 4th 689 (Cal. 1993), a contractor cannot be held liable for

21  injuries suffered by its subcontractor's employee where the injuries were caused by the

22  negligence of the subcontractor.

23          In *Privette*, the court considered the doctrine of "peculiar risk," under which "a person

24  who hires an independent contractor to do inherently dangerous work can be held liable for tort

25  damages when the contractor causes injury to others by negligently performing the work."

26

1 | *Toland v. Sunland Housing Group, Inc.*, 18 Cal. 4th 253, 256.  *Privette* held that

2 | under the peculiar risk doctrine the hiring person's liability does not extend to the
3 | hired contractor's employees.  Because the Workers' Compensation Act
   | (Lab.Code, § 3200 et seq.) shields an independent contractor from tort liability to
4 | its employees, applying the peculiar risk doctrine to the independent contractor's
   | employees would illogically and unfairly subject the hiring person, who did
5 | nothing to create the risk that caused the injury, to greater liability than that faced
   | by the independent contractor whose negligence caused the employee's injury.

6 | *Id.* (citing *Privette*, 5 Cal. 4th at 698-700).  However, subsequent cases have clarified that the

7 | reasoning of *Privette* does not extend to bar all suits against the contractor for the contractor's

8 | own negligence.  *See, e.g.*, *Ray v. Silverado Constructors*, 98 Cal. App. 4th 1120, 1127 (Cal. Ct.

9 | App. 2002) ("With [*McKown v. Wal-Mart Stores, Inc.*, 27 Cal. 4th 219 (Cal. 2002)], the Court

10 | eliminated any doubt that a direct negligence cause of action may be maintained against the hirer

11 | of an independent contractor without running afoul of *Privette* and *Toland*.").

12 | Lexington contends that the *Privette* line of cases is a "red herring" and does not support

13 | Valley Forge's motion because the peculiar risk doctrine is simply not at issue and because none

14 | of the cases dealt with insurance coverage issues.  Valley Forge argues that its position is based

15 | not on the peculiar risk doctrine, but on the California Supreme Court's elimination of vicarious

16 | liability for general contractors, such as Nibbi, for injuries to the employees of subcontractors,

17 | like Doyle's, solely caused by the *subcontractors'* negligence.   According to Valley Forge, the

18 | *Privette* line of cases is directly relevant here because it establishes that the only basis for Nibbi's

19 | liability for Hetrick's injury is Nibbi's own negligence and not negligence attributable to Doyle's.

20 | **c.      Nibbi's Indemnification Rights**

21 | **i.       Applicable indemnification provisions**

22 | Valley Forge contends that the relevant indemnity provisions are found in Paragraph 3 of

23 | the Subcontract.  These provisions state, among other things, that Doyle's "shall defend

24 | Contractor and Owner regarding all matters described in this indemnity clause, but shall only be

25 | liable for Subcontractor's own proportional share of negligence as determined by a 'trier of

26 |

27 | Case No. C 09-1385
   | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
   | MOTION FOR PARTIAL SUMMARY JUDGMENT
28 | (JFLC3)                                        9

1   fact.'" (Compend. Ex. 1 at Stip 005, ¶ 3.5.)  It argues that because any liability for Doyle's

2   "proportional share of negligence" was resolved through its payment of workers' compensation

3   benefits to Hetrick, and because that liability was the only basis for indemnification under

4   Paragraph 3.5, Nibbi is not entitled to indemnification under the Subcontract.

5          Lexington contends, without explanation, that Paragraph 3.5 is not applicable to the facts

6   in this case.  It argues further that even if the paragraph is applicable, it cannot serve as the basis

7   for summary judgment because it requires a determination of Doyle's "proportional share of

8   negligence as determined by a 'trier of fact,'" a condition that has not been met because the

9   Underlying Action settled before trial.

10         Lexington claims that the Court should look instead to two other indemnity provisions,

11  specifically Paragraphs 3.1.4 and 25, and that Nibbi is entitled to indemnity from Doyle's under

12  both of these provisions.  Lexington relies on evidence in the record that Doyle's failed to

13  comply with various Occupational Safety and Health Administration ("OSHA") regulations and

14  provisions of the California Labor Code sections by failing to train its employees.  Relying upon

15  Paragraph 25, Lexington argues that "all that need be shown is that Doyle's or Hetrick failed to

16  fulfill the requirements of any applicable safety laws, regulations or rules, such as the OSHA

17  provisions," and that the evidence of such violations is sufficient to defeat summary judgment.

18  (Def.'s Opp'n 17.)  Lexington contends that the same violations establish Nibbi's entitlement to

19  indemnity under Paragraph 3.1.4.

20         Valley Forge argues that Paragraph 25 merely requires that Doyle's "defend against any

21  citation, assessment, fine or penalty" and does not apply to tort liability for bodily injury or

22  property damage.  It contends that to the extent that Doyle's alleged violations of OSHA and

23  Labor Code provisions could could have subjected Nibbi to liability for breach of contract, Nibbi

24

25

26

1  faces no possible liability because of the settlement of the *Hetrick* lawsuit.[3]

2             **ii.**       **California law**

3       Valley Forge asserts that the *Privette* line of cases shields Doyle's from Nibbi's

4  indemnification claims despite the parties' express agreement.  Valley Forge relies on the

5  following passage from *Toland*:

6       *Privette* also noted that when the injured person is an employee of the independent
     contractor, a policy justification for imposing peculiar risk liability on the hiring
7       person–namely *the hiring person's right to equitable indemnity* from the
     independent contractor–is also absent. (*Privette*, *supra*, 5 Cal.4th at p. 701, 21
8       Cal.Rptr.2d 72, 854 P.2d 721.)  We explained: "When a property owner or general
     contractor who hires an independent contractor for work presenting a peculiar risk
9       of harm to others is held liable under the doctrine of peculiar risk for injuries to an
     innocent bystander or an owner of neighboring land, the property owner or general
10      contractor can, for the damages paid the injured party, obtain equitable indemnity
     from the independent contractor responsible for the injuries.  This ensures that the
11      ultimate responsibility for the harm caused by the peculiar risk of the work done is
     borne by the individual or entity at fault for the injury.  *But when the person*
12      *injured is an employee of the independent contractor, the exclusivity provisions of*
     *the workers' compensation scheme shield the negligent contractor from an action*
13      *seeking equitable indemnity.*  ([Lab.Code,] § 3864.)" (Ibid.)

14 *Toland*, 18 Cal. 4th at 261 (emphasis added).  According to Valley Forge, *Privette* and *Toland*

15 establish that "Nibbi is precluded from seeking equitable indemnity from Doyle's for injuries

16 sustained by Doyle's employee, Hetrick." (Pl.'s Mot. for Summ. J. ("MSJ") 10.)

17      The California Supreme Court addressed a similar situation in *Redfeather v. Chevron*

18 *USA, Inc.*, 57 Cal. App. 4th 702 (Cal. Ct. App. 1997).  In that case, the court relied on *Privette* to

19 conclude that Chevron, the general contractor, could not be held vicariously liable for injuries

20

21      [3]Valley Forge also argues for the first time in its reply papers that Nibbi could be found
22 solely responsible for its "active negligence" even if Doyle's was "passively negligent." (Valley
    Forge Reply 11-12.)  Even if this argument had been made in the moving papers and Lexington
23 had an opportunity to respond, the only support Valley Forge offers for its argument is the
    statement that "Nibbi's placement of the ill-suited bridge is an active act and trumps any attempt
24 to shift responsibility to Doyle's in connection with its training." (*Id.* at 12 (citing *Atkinson Co.*
25 *v. Schatz*, 102 Cal. App. 3d 351, 355 (Cal. Ct. App. 1980).)  This is insufficient to meet the
    summary judgment standard.
26

27 Case No. C 09-1385
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
28 (JFLC3)                        11

1    suffered by Redfeather, an employee of Pool Company, the subcontractor, despite the fact that

2    the subcontract "contained an express indemnity agreement requiring Pool Company to

3    indemnify Chevron against all liability for injury to an employee of the Pool Company."

4    *Redfeather*, 57 Cal. App. 4th at 704.  The court explained the public policy considerations

5    supporting this application of *Privette*:

6         [T]o make the person who hires an independent contractor liable for the
          workplace injuries of the latter's employees merely because of an indemnification
7         agreement is to make both the hirer and the independent contractor pay for the
          same risk twice in the form of insurance premiums which must provide two kinds
8         of coverage to accommodate the same risk.  That is, the person who hires an
          independent contractor must not only pay a price which covers the independent
9         contractor's *workers' compensation* insurance costs, but must also have to pay a
          cost which covers the independent contractor's *liability* insurance costs for the
10        contractual liability the independent contractor will have assumed for the tort
          liability of the general contractor.

11

12   *Redfeather*, 57 Cal. App. 4th at 706.

13                    **d.      Additional Insured Status**

14        Valley Forge also argues that it is not obligated to indemnify Nibbi as an additional

15   insured under the Valley Forge Policy.  It contends that additional insured coverage is limited to

16   liability resulting from Doyle's work and does not extend to liability resulting from Nibbi's sole

17   negligence.  It asserts that because any liability resulting from negligence on behalf of Doyle's

18   was resolved under the workers' compensation scheme, Nibbi is not an additional insured.  *See,*

19   *e.g.*, *St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co.*, 111 Cal. App. 4th 1234, 1245 (Cal. Ct.

20   App. 2003) ("when additional insured endorsements, by their own terms, depend on the existence

21   of a written contract between the named insured and the additional insured, the contract is a

22   significant circumstance in determining the objectively reasonable expectations of the additional

23   insured").

24        Lexington contends that Valley Forge's interpretation is incorrect because "[l]imiting

25   additional insured status to the named insured's 'negligence' simply incorporates a fault-based

26

27   Case No. C 09-1385
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
     MOTION FOR PARTIAL SUMMARY JUDGMENT
28   (JFLC3)                                        12

1   requirement to trigger such status; it does not measure the extent of Valley Forge's obligation."

2   (Def.'s Opp'n 19.)  It also argues that Valley Forge's interpretation fails to give meaning to all of

3   the terms in the additional insured endorsement by rendering the provision that "[n]o coverage

4   applies to liability resulting from the sole negligence of the additional insured" redundant.

5        Lexington also claims that Valley Forge's interpretation of the endorsement contradicts

6   the intent of Nibbi and Doyle's as reflected in the Subcontract and would mean that Doyle's

7   breached the insurance requirement in the Subcontract.  Lexington points out that pursuant to

8   Schedule H, the additional insured endorsement shall contain no "sole negligence" clause with

9   regards to the named insured, and that "Valley Forge's interpretation of the additional insured

10  endorsement as limiting indemnity based on fault allocation renders meaningless the agreement

11  that Nibbi's insurance shall be excess and non contributory." (Lexington Opp'n 19.)  Finally,

12  Lexington argues that even if Valley Forge's interpretation were correct, summary judgment is

13  inappropriate because there have been no findings of fact as to the parties' respective liability for

14  Hetrick's accident.

15       Valley Forge claims that no case authority supports Lexington's arguments, and that case

16  law establishes clearly that the Court should look to Subcontract to determine the liability

17  obligations of the parties' insurers.  Valley Forge also contends that Lexington's claim that the

18  additional insured endorsement does not include a measure of Valley Forge's obligation "ignores

19  the legal reality of what Doyle's could be exposed to in this case." (Valley Forge Reply 14.)

20       Although the additional insured language does not itself include a measure of
    negligence requirement, this has already been done by *Privette* and the California

21  Workers Compensation Limited Liability doctrine.  By tying Nibbi's additional
    insured status to *Doyle's negligence only*, no measurement of fault need happen

22  *since all negligence attributable to Nibbi* (no matter how much) would be Nibbi's
    (and Lexington's) alone to settle.

23

24  (*Id.* (emphasis in original).)

25       Valley Forge argues that the "sole negligence" language is complementary rather than

26

1    superfluous and that Lexington's contrary reading "requires the introductory clause ['solely for

2    liability due to (Doyle's) negligence and specifically resulting from (Doyle's) work . . . ' to] be

3    disregarded." (*Id.*)  It makes a similar argument with respect to Lexington's claim that Schedule

4    H demonstrates that the parties would not contain a "sole negligence clause."  Finally, Valley

5    Forge contends that Lexington's argument that a factual evaluation is required "ignores *Privette*

6    and the practical and legal conclusion that Doyle's cannot be obligated for its employee's

7    injuries." (Valley Forge Reply 15 (citing *Privette*, 5 Cal. 4 at 697).)

8                    **e.        Equitable Indemnity**

9           Valley Forge argues that it is entitled to reimbursement for all of the money it paid to

10   Hetrick as part of the settlement.  It points out that the underlying action was brought against

11   Nibbi alone, was based on an occurrence covered by the Lexington Primary Policy, and "[t]he

12   only negligence Hetrick could have recovered for was Nibbi's own." (Valley Forge Mot. 19.)  It

13   argues that because the suit did not name Doyle's, recovery would not have been available from

14   Doyle's because of the exclusivity of the workers' compensation scheme.

15          Lexington contends that summary judgment is inappropriate because there were no

16   findings of fact in the Underlying Action and the respective liabilities of the insureds thus were

17   never resolved.  It also argues that third-party alleged tortfeasors such as Nibbi are entitled to

18   "raise the issue of the employer's concurrent negligence in any feasible way to permit its

19   ascertainment." (Lexington Opp'n 22.)  Lexington cites *Assoc. Constr. & Eng'g Co. v. Workers'

20   *Comp. Appeal Bd.*, 22 Cal. 3d 829 (1978), for the proposition that "when the issue of an

21   employer's comparative negligence for its employee's injury arises in a judicial action,

22   comparative negligence principles must be applied." (Lexington Opp'n 23.)  According to

23   Lexington, *Associated Construction* "shows that . . . there is a well-recognized procedure for

24   employers and third parties to adjust damages based on their respective degrees of fault for an

25   accident suffered by the employer's employee." (*Id.*)

26

27

28

1    Valley Forge contends that *Associated Construction* is distinguishable on its facts and

2    that Lexington has taken language from that opinion out of context.  According to Valley Forge,

3    "[a] more inclusive quotation would have shown that the court was discussing an unrelated

4    situation."  (Valley Forge Reply 18.)  The "unrelated situation" was an employer's credit claim,

5    which required the worker's compensation board to determine the employer's appropriate

6    contribution.

7                        **f.        Alternative Request for Apportionment**

8    Valley Forge requests alternatively that the Court "apportion the settlement in accordance

9    with Nibbi's and Doyle's relative degree of fault."  (Valley Forge Mot. 20.)  It argues that "the

10   facts *will show*[] that Hetrick's injuries are entirely attributable to Nibbi's actions."  (*Id.*

11   (emphasis added).)  Lexington contends that this request should be denied because the facts with

12   respect to liability are still at issue and should be settled at trial.

13           **2.        Analysis**

14   Lexington is correct that under California law, an employee's sole remedy against the

15   employer for workplace injury is the workers' compensation scheme.  *See, e.g.*, *Mueller v.

16   County of Los Angeles*, 176 Cal. App. 4th 809, 823 (Cal. Ct. App. 2009) ("Injuries sustained and

17   arising out of the course of employment are generally subject to that exclusive remedy.  The

18   exclusive remedy applies even when the damages result from intentional conduct by the

19   employer that is a normal part of employment relationships, and even though such conduct may

20   be described as egregious, harassment, manifestly unfair, or intended to cause emotional

21   distress.").  That does not end the inquiry here, however.  As another district court in the Ninth

22   Circuit recently observed:

23           Although an employee receiving workers' compensation benefits is barred
        from asserting civil liability claims against his or her employer, the employee can
24      still pursue a civil action and recover a judgment from a negligent third party
        under section 3852 of the Labor Code. [citations omitted]  Likewise an employer
25      who "pays or becomes obligated to pay workers' compensation benefits to an
        injured employee may seek reimbursement" from a negligent third party. [citation

26

27   Case No. C 09-1385
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
     MOTION FOR PARTIAL SUMMARY JUDGMENT
28   (JFLC3)                                    15

1    omitted]
          Reimbursement may be pursued in three ways: "the employer 'may bring
2    an action directly against the third party (§ 3852), join as a party plaintiff or
     intervene in an action brought by the employee (§ 3853), or allow the employee to
3    prosecute the action himself and subsequently apply for a first lien against the
     amount of the employee's judgment, less an allowance for litigation expenses and
4    attorney's fees (§ 3856)' [Citation.]" [citations omitted] *An employer is
     accountable for its own negligence in causing the employee's injury, and
5    therefore is only reimbursed for the amount by which its compensation liability
     exceeds its proportional share of the injured employee's recovery.* [citations
6    omitted] Any degree of employee fault in causing the injury is not attributed to
     the employer for purposes of reducing reimbursement. [citations omitted]
7          It is also well established in employee negligence actions against third
     parties that, where an employer is concurrently negligent, any judgment against
8    the third party is reduced by the amount of workers' compensation benefits
     received by the employee.  [citations omitted]
9

10   *Hall v. N. Am. Indus. Services, Inc.*, No. 1:06-cv-00123 OWW SMS, 2007 WL 3020075 at *12-

11   13 (E.D. Cal. Oct. 11, 2007) (emphasis added).

12        The Court agrees with Valley Forge that Nibbi cannot be held liable for injuries to

13   Hetrick, a Doyle's employee, that were not caused by Nibbi's own negligence. *See Toland*, 18

14   Cal. 4th at 267 ("*Privette* [citation omitted] bars employees of a hired contractor who are injured

15   by the contractor's negligence from seeking recovery against the hiring person, *irrespective* of

16   whether recovery is sought under the theory of peculiar risk.") (emphasis in original)).

17   Nonetheless, the parties' proportional share of liability for the *Hetrick* settlement cannot be

18   determined on summary judgment because genuine issues of material fact exist as to the

19   respective negligence of the parties.  Lexington's motion must be denied for the same reason.

20   The Court cannot conclude as a matter of law that the Lexington Excess Policy will not be

21   obligated to pay for any portion of the Hetrick settlement where the parties' respective negligence

22   has not been determined and where the total value of the settlement–$1.7 million–exceeds the

23   limit of the Lexington Primary Policy– $1 million.

24   //

25   //

26

27   Case No. C 09-1385
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
     MOTION FOR PARTIAL SUMMARY JUDGMENT
28   (JFLC3)                                        16

1

## IV.  DISPOSITION

2          For the reasons stated above, both of the instant motions will be denied.  A case

3   management conference is scheduled for July 30, 2010, at 10:30 A.M.[4]

4

5

DATED: July 19, 2010

6                                                              JEREMY FOGEL
                                                              United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

_____

25          [4] Each party objects to certain evidence submitted by the other.  Because the Court would
    deny both motions in any event, the objections will be overruled as moot.
26

27   Case No. C 09-1385
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
     MOTION FOR PARTIAL SUMMARY JUDGMENT
28   (JFLC3)                                      17